LIBRARY BUREAU v. FRED MACEY CO., Limited.

(Circuit Court, D. Massachusetts. February 13, 1905.)

No. 1,624.

1. PATENTS—INVENTION—CARD RECORDS.

The Williams patents, Nos. 623,857 and 624,597, for improvements in card records, consisting in placing an additional index tab on reversible record cards, designed to be symmetrically arranged in groups in their index order—the additional tab having the same index character on the back as the other tab, but marked in ink of a different color—are void for lack of invention, in view of the prior art.

In Equity. Suit for infringement of patents. On final hearing.

Roberts & Mitchell, for complainant.

Fred S. Chappell, for defendant.

COLT, District Judge. This is a suit for infringement of two patents granted to Stephen T. Williams for improvements in card records— No. 623,857, dated April 25, 1899, and No. 624,597, dated May 9, 1899. Patent No. 624,597, although later in date, was first applied for, and is therefore properly called the first Williams patent.

These card records comprise groups of cards, with index tabs upon their upper edges, symmetrically arranged in a box or drawer. It is found to be both convenient and economical to make entries on the back of these cards, especially when used for ledger purposes. In cards which have only one tab—as, for example, in the Gunn series—the user cannot tell, on running his eye over the tabs, whether there are entries on the back of any of the cards. To ascertain this fact with respect to any card, it is necessary to take it from the file, turn it over, and then replace it in its proper position in the series. To avoid this trouble, it occurred to Williams to put an additional tab on each card, and to mark the back of it with the same index character as the other tab, and to distinguish the two tabs by using inks of different colors. When there are records on the back of a card, it is reversed, back for front, and replaced in the box in its proper index order, and the difference in the color of the index number will convey the required information, without taking the card from the file and inspecting it.

In the first Williams patent, the two tabs, or "twin tabs," as the patentee terms them, are both located on the upper edge of the card, while in the second patent they are located on opposite edges of the card. The material parts of the specification of the first Williams patent, No. 624,597, are as follows:

"It is frequently the case that both sides of a card are required for records. In that case the card, when removed from its group, must be turned over by the hand; and, after the records have been made, it must be turned back again, in order that the index character may face the recorder or searcher. If the card have only a single tab inscribed on the back, with the same index character as that upon the front of the tab, whenever the card is reversed as to face and back, but without reversing top and bottom, the tab will occupy a different position in the index order from its former one, and disconcert the searcher. This disarrangement of index order by such reversal of a card is unavoidable with any card group or series bearing but one index of consecutive letters or numbers. If every card of such a

group is reversed whenever the consecutive order of the index characters on the back of the card is consulted, the card must be taken from its place and turned over for inspection, and turned back again when restored to its place in the file. The motions involved in this taking out and turning over consume time, and when many hundreds or thousands of cards are to be handled in a day, whether by one person or many, the wasted time and energy become a very sensible quantity. An attempt to remedy this fault has been made, in which the backs of the cards are so ruled that records on the back begin at the bottom of the card and proceed upward, the intention being to enable inspectors to read the backs as well as the fronts without removal from the file. Practically the plan is a failure; the inspector being obliged to bend his body or neck into unnatural positions to read the back of the card at all, and obscuring the light necessary for rendering the records legible in a card-file. Again, with all tab-card indexes or records heretofore used in drawer or box files, only the person in front of or facing the file could conveniently read the index characters and use the file at one time.

"This invention has for its object, first, the saving of wasted motions and time in reading and handling such card indexes or record cards; and, second, providing for or facilitating the filing and inspection of such card records, etc., by two or more persons at the same time.

"I effect my purpose by providing two index tabs upon the same edge of each card in a group; these tabs, which I term 'twin tabs,' being in the same relative position, measured from the two ends or two opposite edges of the card, and so positioned that upon reversal of the card, side for side and back for front, the twin tabs exchange places in the index order. I indite the same index character upon the face of one tab and upon the back of its twin tab, preferably in inks of different colors for the front and back of the two tabs. My object in using different-colored inks for this purpose is to have the changed color inform the inspector that the card has been reversed, and that there are records on the reverse side. Otherwise the inspector, who wishes to know how much matter has been recorded, and if the reverse side has been used, must remove the card from its file and turn it over to ascertain the information."

The claims of the patent are as follows:

"(1) In a group of index or record cards or sheets consecutively indexed in opposite directions, twin index tabs provided upon one edge of each of such cards or sheets, so positioned that by reversal of a card, side for side and back for front, the twin tabs are caused to exchange places in the index order, substantially as and for the purpose herein described.

"(2) A group of index or record cards, each having upon one edge two tabs, with the same index character inscribed upon one side of one of said tabs, and upon the opposite side of the other one, substantially as and for the purpose herein described.

"(3) A reversible index card, having on one edge two index tabs, bearing— one on its face, and the other on its back—corresponding index signs, and having the faces of the index tabs distinguished from the backs thereof by different colors, substantially as and for the purpose set forth.

"(4) A reversible index card, having on one edge two index tabs, bearing— one on its face, and the other on its back—corresponding index signs, which are of one color on the face and another color on the back of the card, substantially as and for the purpose set forth."

In the second Williams patent, No. 623,857, the specification says:

"In my application, serial No. 694,520, for United States patent, filed October 25, 1898, I have described and claimed record cards having duplicate indexes, of which the index characters are inscribed upon what I call 'twin tabs,' which consist of two tabs on the same edge of each card, similarly indexed, one on one side, and the other on the other side. In such record cards the space for indexing either face—that is to say, the front or back of the card—is limited to one-half the length of that edge of the card on which the index is placed, and therefore such card must be of considerable length to admit of the double indexing.

"The present invention gives duplicate indexes on opposite sides of the cards, with cards shorter than any that would be practicable with the cards having twin tabs, above mentioned.

"The said invention is mainly distinguished by the provision of a single tab on each of two opposite edges of each card of a group used in an index; the two tabs on said two edges being exactly opposite each other, and having upon them similar index characters, but the said characters being on opposite sides of the card, so that, when any one of the cards of a group is reversed, the corresponding index character on the back will occupy precisely the same position in the index as was previously occupied by a figure on the face. This and other features of the invention are fully represented in the accompanying drawings, and will be hereinafter described in detail with reference thereto, and their novelty will be pointed out by the claims following the description."

The claims in issue are as follows:

"(1) A reversible index card having a tab on each of two opposite edges, the said tabs arranged opposite each other and having corresponding index characters, substantially as and for the purpose herein described.

"(2) In a group of index or record cards or sheets in which the several cards of a group are consecutively indexed, two index tabs upon each of said cards, arranged exactly opposite each other, on opposite edges of the card, and having corresponding index characters inscribed on one face of one tab, and on the other face of the opposite tab, substantially as and for the purpose herein described.

"(3) An index or record card having two tabs, one on each of two opposite edges of the card, and having corresponding index characters on said tabs, the said characters being of different colors, one on one face of one tab, and the other on the other face of the other tab, substantially as herein described."

"(5) An index or record card having index tabs on its edges, and corner tabs of greater projection than the index tabs, substantially as and for the purpose herein described."

The essence of the Williams inventions disclosed in the foregoing patents consists in placing an additional tab on record cards designed to be symmetrically arranged in groups in their index order; the additional tab having the same index character on the back as the other tab, but marked in ink of a different color, in order to distinguish it.

The exhibit of the twin-tab card ledger manufactured and sold by the complainant contains an elaborate system of combined signal tabs, index tabs, and color differentiation, which is neither disclosed in, nor covered by, the patents in suit.

In view of the prior art, as illustrated in the Gunn patent, No. 583,227, the Langstroth patent, No. 475,043, and the Stamford patent, No. 564,-117, I am of opinion that the Williams patents are void for want of invention.

Bill to be dismissed.